Allen v. Allen.

---

No. 23,094.

NANCY ALLEN, *Appellee*, v. MALINDA R. ALLEN, *Appellant*.

SYLLABUS BY THE COURT.

1. POSTNUPTIAL CONTRACT—*Division of Property—Contract Canceled Only by Mutual Agreement.* A husband and wife became estranged, and believing that it was impossible for them to live together any longer, entered into a written contract for a division of their property which provided that neither should inherit from the other. The contract contained no provisions for either party which might not with equal propriety have been made by married people if no separation had been contemplated. *Held,* in an action where the validity of such a contract was involved, that the court properly instructed that the mere fact that after the execution of the postnuptial contract the parties became reconciled and resumed marital relations would not be sufficient of itself to warrant the jury in finding that the contract had been set aside; that in order to revoke such contract both parties to it must consider it annulled and that one of them alone could not set it aside, and that in passing upon the question whether it had been canceled by mutual agreement all the circumstances in evidence tending to prove the intention of the parties should be considered by the jury.

2. SAME—*Parol Evidence Incompetent to Change or Modify Contract.* In a case involving such a contract the widow sought to prove that at the time the contract was executed her attorney said in the presence of herself and husband that if they resumed marriage relations the contract would be annulled. *Held,* that the evidence was incompetent under the rule forbidding parol testimony to modify or change the terms of a written contract.

3. SAME. In such a case it is held that the testimony of the wife concerning her intention with respect to annulling the contract at the time or after the resumption of the marriage relations was incompetent because her intention was not a circumstance from which the jury would have the right to infer what the intention of her husband was.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed April 9, 1921. Affirmed.

*R. C. Miller,* and *C. Vincent Jones,* both of Clay Center, for the appellant.

*W. T. Roche,* of Clay Center, and *A. E. Crane,* of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant is the widow of Charles E. Allen; they were married in March, 1913. At that time the appellant, who is the mother of grown children, owned 240 acres of farm land near Clay Center and some city property. Charles E. Allen owned some personal property and also the real estate involved in this action. In August, 1916, the appellant brought suit to enjoin her husband from selling or disposing of crops raised on land occupied by them and owned by her. On September 1, 1916, the husband and wife separated, the appellant moving to the home of her son in Clay Center, the husband going to the home of his mother, Nancy Allen, the appellee, who lives at Holton. Four days afterwards the appellant and her husband entered into a postnuptial contract, the preamble of which contained this recital:

"It has developed that they cannot and have not lived peaceably and harmoniously as husband and wife should live, but have become so estranged from each other they deem it impossible for them to live together any longer as husband and wife."

The contract recited that in consideration of the fact that the parties had ceased to live together as husband and wife and "fully realizing the rights of each in and to the property of the other and in and to the property accumulated by them during their married life, and being desirous of settling all their property rights so that each may own their own property in severalty, the same as if they were not married," each should execute a deed for the other's property, and deeds were executed in accordance with this provision and duly recorded. The contract provided that neither should inherit any of the property of the other. About four weeks after the execution of the contract the husband left Holton and came to where appellant was living with her son in Clay Center, and the parties resumed their marital relations and lived together as husband and wife until the husband's death, which occurred in October, 1918. This action, which is in ejectment, was brought by his

mother to recover the real estate set aside to him by the terms of the contract. The defense was that the postnuptial contract had been annulled by appellant and Charles E. Allen. The jury returned a verdict in favor of the appellee. A motion for a new trial was overruled and from the judgment the widow appeals.

The principal complaint is of an instruction in which the court charged that the mere fact that after the execution of the postnuptial contract the parties became reconciled and resumed marital relations would not of itself be sufficient to warrant the jury in finding that the contract had been set aside, but that fact must be established to the satisfaction of the jury by a preponderance of the evidence; that in order to revoke such a contract both parties to it must consider it annulled and that one of them alone could not abrogate or set it aside. The court further instructed that in passing upon the question whether or not the contract had been canceled by mutual agreement all the circumstances and evidence in the case bearing upon and tending to prove the intent of the parties should be considered by the jury, and that an intention of that kind might be implied from the circumstances and conduct of the parties, as well as by direct proof, but before the jury would be warranted in holding the contract annulled they must find from the preponderance of the evidence that it was the intention of the parties after resuming the marriage relations that the contract should be revoked.

Contracts of this character, designed to control the division of property and affecting the descent of property, which are freely and intelligently made and which are just and equitable in their provisions have often been upheld. (*King v. Mollohan,* 61 Kan. 683, 60 Pac. 731; *Dennis v. Perkins,* 88 Kan. 428, 129 Pac. 165; *Eberhart v. Rath,* 89 Kan. 329, 131 Pac. 604; and see cases cited in those opinions.)

In the Mollohan case the contract had been made in view of a separation, but as was said in *Eberhart v. Rath,* supra, "that fact only afforded a reason for making the contract." (p. 335.) In the opinion in the latter case it was also said:

"The validity of such agreements depends upon the equities arising out of the circumstances which may be just as strong when the parties are living happily together as exist after domestic tranquillity had been destroyed." (p. 335.)

In *Dennis v. Perkins,* supra, a judgment was reversed because the court instructed in substance that the jury should find for the plaintiff if the parties became reconciled and resumed their marriage relations and continued to live together as husband and wife for a time prior to the death of the wife. In the opinion, the court used this language:

"It is frequently said that reconciliation and resumption of the marital relation will render a contract void. This is a loose and inaccurate statement of a supposed rule. Courts cannot make or unmake contracts, but can only determine the effect of express or implied agreements made by those competent to act for themselves. Rescission or abrogation is as volitional as the act of contracting. . . The truth is, and the law is, that having entered into a valid separation agreement the courts cannot and will not deem such contract avoided unless the conduct of the parties impels to the conclusion that they themselves so regarded it." (Citing authorities.) (p. 433.)

The contract in the present case contains no provisions for either party which might not with equal propriety have been made by married people if no separation had been contemplated. In discussing the same proposition in *Nicol v. Nicol,* 31 Ch. Div. 524 (L. R. 1886), the following language was used by Lord Justice Bowen:

"I think that the true principle is that a renewal of cohabitation will put an end to all or any of the provisions of a separation deed, so far as the language of the deed, properly construed by the light of surrounding circumstances, shews that its provisions were only intended to take effect whilst the separation lasted. . . . Separation deeds are often very complicated, and some provisions may be intended to apply even in the case of a reconciliation, while others may be quite inapplicable to such a state of things, and I should prefer to construe each deed by the light of its surrounding facts rather than to lay down a crystallized rule." (p. 529.)

Another claim of error relates to the exclusion of testimony. A witness who was present when the contract was executed at the office of appellant's attorney was asked the following question:

"Was anything said at the time this contract was agreed upon by anybody as to what effect it would have upon the contract if the marriage relation was resumed?"

The answer was that at the time of the execution of the contract appellant's attorney said in the presence of both parties and in the presence of the attorney for the husband

that if the husband and wife resumed the marriage relations the contract would be annulled, and that the attorney who represented the husband made no dissent from this statement. The court struck out the evidence on the ground that it was incompetent under the rule forbidding parol evidence for the purpose of modifying or changing the terms of a written contract. It would, of course, have been competent for the parties to have provided in the contract that in the event they should resume marital relations the contract should be void, but what was said by them or by any person to them, before or after the contract was executed, could not affect the contract, and evidence of such statements would clearly violate the rule under which the court excluded the evidence.

There is no merit in the contention that the court erred in refusing to permit appellant to testify what her intention was when she and her husband resumed marriage relations. Evidence of her intention was not admissible because it was not a circumstance from which the jury would have the right to infer what the husband's intention was. The court properly instructed that one of the parties alone could not set aside the contract.

There are circumstances in this case which tend to show that it was not the intention of the parties to annul the contract. The appellant testified that she retained her copy of the agreement and placed it for safe keeping in a private box in a bank at Clay Center, and that she placed it there sometime during the first or second year after the contract was executed, which must have been after she and her husband had resumed the relations of husband and wife. There was evidence tending to show that the husband kept his copy of the agreement in his box of private papers in another bank at Clay Center.

We find no error in the record, and the judgment is affirmed.